UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **RICKEY SINGLETON**<br>    **LA. DOC #79788**<br>**VS.** | **CIVIL ACTION NO. 5:14-cv-2513**<br><br>**SECTION P**<br><br>**JUDGE ELIZABETH E. FOOTE** |
| **JEFFERY BRUCE FULLER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION
AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

*Pro se* plaintiff Rickey Singleton, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 18, 2014 [Doc. 1]; on the same day he filed a motion seeking an "Emergency Temporary Restraining Orders Injunction Against the Defendants." [Doc. 3] Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the David Wade Corrections Center (DWCC) and claims that the defendant health care professionals and corrections officials are denying him appropriate medical care.  He prayed for injunctive relief – both preliminary and permanent – and money damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff is an inmate in the custody of the DOC; he is incarcerated at the DWCC.  On

some unspecified date plaintiff was diagnosed with H.I.V.[1] by unnamed physicians at the LSU Medical Center in Shreveport. According to plaintiff, these "outside doctors" at LSU Medical Center prescribed "Neurotin"[2] for his condition. Elsewhere, he claimed that Neurotin® was prescribed by "outside doctors at Huey P. Long Hospital in Alexandria, Louisiana some time in the years of 2002 for H.I.V. treatment." According to plaintiff, he "has other chronic diseases which also required neurotin (sic) medication discovered in 2005." (It is unclear whether plaintiff was incarcerated at the time he was diagnosed and prescribed the medication in

---

[1] HIV stands for human immunodeficiency virus. It kills or damages the body's immune system cells. AIDS stands for acquired immunodeficiency syndrome. It is the most advanced stage of infection with HIV. The first signs of HIV infection may be swollen glands and flu-like symptoms. These may come and go a month or two after infection. Severe symptoms may not appear until months or years later. There is no cure, but there are many medicines to fight both HIV infection and the infections and cancers that come with it. People can live with the disease for many years. There are five major types of medicines – Reverse transcriptase (RT) inhibitors - interfere with a critical step during the HIV life cycle and keep the virus from making copies of itself; Protease inhibitors - interfere with a protein that HIV uses to make infectious viral particles; Fusion inhibitors - block the virus from entering the body's cells; Integrase inhibitors - block an enzyme HIV needs to make copies of itself; and, Multidrug combinations - combine two or more different types of drugs into one. These medicines help people with HIV, but they are not perfect. They do not cure HIV/AIDS. People with HIV infection still have the virus in their bodies.

Medline Plus, A service of the U.S. National Library of Medicine, National Institutes of Health, Health Topics at http://www.nlm.nih.gov/medlineplus/hivaids.html

[2] Plaintiff means Neurontin® or gabapentin. Gabapentin is used to help control certain types of seizures in people who have epilepsy. Gabapentin is also used to relieve the pain of postherpetic neuralgia (PHN; the burning, stabbing pain or aches that may last for months or years after an attack of shingles). Gabapentin is in a class of medications called anticonvulsants. Gabapentin treats seizures by decreasing abnormal excitement in the brain. Gabapentin relieves the pain of PHN by changing the way the body senses pain. Gabapentin is also sometimes used to relieve the pain of diabetic neuropathy (numbness or tingling due to nerve damage in people who have diabetes), and to treat and prevent hot flashes (sudden strong feelings of heat and sweating) in women who are being treated for breast cancer or who have experienced menopause ("change of life", the end of monthly menstrual periods). Medline Plus, Drugs & Supplements, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html#why

question.)

On March 27, 2014 the Neurontin® prescription was discontinued by Dr. Jeffery Bruce Fuller.  When plaintiff complained, he was seen by Dr. Hearn who also refused to renew the prescription for the medication.  According to plaintiff, as a result of the discontinuation of the medication, his "breast is leaking [puss], and swollen with discoloration, he is constantly in pain, and hard to keep food down, and losing weight, all because of the defendants failed to provide medical care and treatment when brought to their attention."

Plaintiff filed a grievance with the Warden complaining about the situation. [Doc. 1-1, pp. 4-5] His grievance was accepted on May 27, 2014 and assigned Case Number DWCC-2014-0540 and on June 25, 2014 it was rejected as follows, "... Your Neurontin was discontinued on 3/27/14. There are no sick calls on record after this date reporting problems associated with the discontinuation. Our physicians are in the best position to determine your course of care. You were recently examined by Dr. Hearn on 6/5/14 related to your inguinal hernia. She documented your report of pain associated with your hernia but no other complaint was documented." [Doc. 1-1, pp. 6-7]

Plaintiff then submitted a grievance to DOC Headquarters and on July 21, 2014 it was rejected as follows, "The medical staff is well aware of your medical condition and has adequate information upon which to base a determination of your medical concerns and the treatment necessary. Medical opinion is controlling. As stated in the First Step response, your Neurontin was discontinued on 3/27/14, and you did not make any subsequent sick calls complaining of any medical concerns associated with this discontinuation..." [Doc. 1-1, p. 8]

Along with his complaint, plaintiff filed a pleading seeking a temporary restraining order

and injunction because "... he is aware of the possible death if the medication is not restarted timely..." He also claimed that due to the discontinuation of the medication in question, he is exposed to infections. He prayed for an order directing the defendants to immediately restart the medication. [Doc. 3]

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Medical Care*

Plaintiff is an inmate in the custody of the LDOC. He complains that the physicians,

health care professionals, and prison administrators violated his Eighth Amendment right to be free from cruel and unusual punishment when they discontinued his prescription for the drug Neurontin® which he claims was prescribed by "outside physicians" to treat his H.I.V.

The constitutional right of a convicted prisoner to appropriate medical care is indeed based upon the Eighth Amendment's prohibition of cruel and unusual punishment. In order to establish an actionable violation of the Eighth Amendment, the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted).

It is manifestly obvious that plaintiff simply disagrees with the treatment decisions of the health care professionals – including two physicians – who were responsible for his care and treatment. Plaintiff admits, and the evidence supports, that he was examined by Drs. Fuller and Hearn. Fuller discontinued plaintiff's prescription for Neurontin ® and Hearn concurred.

Plaintiff disagrees with the conclusions and treatment options offered by the DWCC medical staff; however, his disagreement with the health care professionals' diagnosis or treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201

(5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

In any event, in order to allege a violation of the Eighth Amendment plaintiff must not only demonstrate deliberate indifference on the part of the defendants, but he must also demonstrate that the deliberate indifference resulted in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Plaintiff has alleged that as a result of being denied his prescription for Neurontin®, he has begun to experience any number of physical symptoms; in his motion for injunctive relief he suggests that he will now be exposed to infection and death. However, given the nature of the medication, those claims are dubious at best. While plaintiff has alleged that he is experiencing "substantial harm" as a result of the discontinuation of his medicine, he offers only his conclusory opinions to substantiate that claim. In other words, his medical care complaint fails to state a claim for which relief may be granted and dismissal on that basis is appropriate.

***Conclusion and Recommendation***

Therefore,

Plaintiff's Motion for "Emergency Temporary Restraining Orders Injunction Against the Defendants" [Doc. 3] is **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, August 25, 2014.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**